IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

| | |
|---|---|
| HARRY ANTHONY, #223 443 | * |
| Plaintiff, | * |
| v. | * CIVIL ACTION NO. 2:03-CV-312-F |
| | WO |
| CHARLES HUDSON, *et al.*, | * |
| Defendants. | * |

_____

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

I.  INTRODUCTION

Plaintiff, Harry Anthony ("Anthony"), filed this 42 U.S.C. § 1983 action on March 20, 2003 while incarcerated at the Bullock County Jail located in Union Springs, Alabama.[1] The complaint is pending against former Sheriff Charles Hudson, Sheriff Raymond Rodgers, Deputy Sheriff Jake Wheeler, Jailer Charles Thomas, and former Chief Deputy Gary Smith. Plaintiff brings this action for damages against the defendants named above for failing to provide him with timely and adequate medical care during his incarceration in the Bullock County Jail.[2]

Pursuant to the orders of this court, Defendants filed a special report, including

---

[1] Since filing this complaint, Plaintiff has been released from custody.

[2] Plaintiff was arrested on November 18, 2000 and placed in the Bullock County Jail. On May 20, 2002 he entered a guilty plea to first and second degree rape. Anthony was released to the Alabama Department of Corrections on January 29, 2003.

supporting evidentiary material, addressing Plaintiff's claims for relief. (Doc. No. 15.) The court deems it appropriate to treat this document as a motion for summary judgment. Upon consideration of the motion, the evidentiary materials filed in support thereof, and Plaintiff's response thereto (Doc. Nos. 19, 22), the court concludes that the motion for summary judgment should be granted.

## II.  DISCUSSION

*a.  <u>Standard of Review</u>*

To survive Defendants' properly supported motion for summary judgment, Plaintiff is required to produce some evidence supporting his constitutional claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  He must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324.  A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment.  *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).  Consequently, when a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex Corp.*, 477 U.S. at 322; *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607 (11th Cir. 1987).  Where all the materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).  Although factual inferences must be

viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

b. *The Medical Claim*

Plaintiff brings this complaint against various jail and prison staff of the Bullock County Jail for their failure to provide timely and adequate medical care for problems he experienced with his eyes. According to Plaintiff, when he got out of bed on December 23, 2001 his eyes were red and swollen and he could not see. Plaintiff complains that Defendants failed to take him to a doctor that day, but rather, they took him the next day.[3] Anthony contends, however, that the physician who examined him was not an eye doctor and advised Plaintiff that he could do nothing for him. The physician informed Plaintiff that he would have to see an eye doctor. Anthony complains that Defendants failed to take him to an eye doctor. As a result, Plaintiff alleges that his eyes began to swell a lot every day, they became puffy, and he experienced blurred vision. (Doc. No. 1.)

Anthony alleges that Defendants acted with deliberate indifference to his health by failing to provide adequate medical treatment for his eyes. Defendants deny that they acted with deliberate indifference to Plaintiff's medical needs. According to the evidentiary material submitted by Defendants, Plaintiff submitted a sick call slip on February 1, 2002

---

[3]The unrefuted evidentiary material before the court reflects that time period relevant to the matters about which Plaintiff complains occurred between February and May 2002.

complaining about a knot on his buttocks. He was seen that day at the jail infirmary for this complaint in addition to his complaints of coughing, sneezing, and swelling of his eyelids. Medical personnel examined Anthony on February 2, 2002 following his submission of a sick call slip that day in which he complained about a bad cold. His complaints of swollen eyelids and occasional blurred vision were noted as was puffiness to his upper eyelids. Plaintiff received a prescription for eye drops used to treat inflammatory eye conditions and possible bacterial infections. (Doc. No. 15, Affidavits of Defendants Hudson, Rodgers, Wheeler, Thomas, and Smith; Bullock County Jail Records, Dr. Rump's Medical Record.)

Plaintiff next submitted a sick call slip on April 17, 2002 again in regard to his eyes. Dr. Rump examined him that day for his complaints of pain to his eyes and swelling of his eyelids. Dr. Rump noted mild puffiness and redness to Plaintiff's eyes. Plaintiff received a referral to an opthamologist. Defendants made an appointment for Plaintiff with an eye specialist in Montgomery, Alabama. He was unable to attend the appointment, however, which had been scheduled for May 2002, due to an administrative hold that had been placed on Plaintiff in connection with his upcoming criminal trial. Because Plaintiff's criminal case could be called at any time during the time period in which his appointment had been scheduled, he could not leave the jail unless he experienced a medical emergency. The medical department was directed to reschedule Anthony's appointment. Plaintiff did not submit any further medical requests seeking medical attention for his eyes after April 17, 2002. (Doc. No. 15, Affidavits of Defendants Hudson, Rodgers, Wheeler, Thomas, and Smith; Bullock County Jail Records, Dr. Rump's Medical Record.)

In *City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 244 (1983), the Supreme Court held that the protection afforded a pretrial detainee by the Fourteenth Amendment is "at least as great" as the protection under the Eighth Amendment granted to a convicted prisoner. Therefore, at a minimum, the deliberate indifference of officials to the serious medical needs of a pretrial detainee will violate the Fourteenth Amendment. *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419 (11th Cir. 1997). In the context of a claim implicating a denial of medical care for a pretrial detainee, this Circuit has treated the Eighth and Fourteenth Amendment protections as co-extensive. *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985); *Belcher v. City of Foley, Ala.,* 30 F.3d 1390, 1396 (11th Cir.1994). Thus, in order for Plaintiff to prevail on his allegation that Defendants failed to provide adequate medical treatment, he must show that they acted with deliberate indifference to his serious medical condition. *See Thornton v. City of Montgomery*, 78 F. Supp. 1218, 1225 (M.D. Ala. 1999), *aff'd*, 228 F.3d 414, 415 (11th Cir. 2000 ( table)).

"Deliberate indifference" requires that the official know of and disregard an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. at 837. The official "must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. (emphasis added). Deliberate indifference suggests a state of mind more blameworthy than negligence. *Id*. at 835. A "serious medical condition" is an objectively serious medical need, that if left unattended, poses a serious risk of serious harm. *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (internal citations omitted).

In *Farmer*, the Court noted that "deliberate indifference l[ies] somewhere between the poles of negligence at one end and purpose or knowledge at the other . . ." *Id*. 511 U.S. at 836.  Deliberate indifference may be demonstrated by either actual intent or reckless disregard. " *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).  Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837.  Under this standard, a prison or medical official does not act with indifference by providing medical care that is different from that which an inmate desires. *See Hamm*, 774 F.2d at 1575. Further, a showing of negligence, neglect, or medical malpractice is insufficient to establish a constitutional violation. *Rogers*, 792 F.2d at 1058; *see also Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979).

A claim about a failure to provide immediate or emergency medical attention must involve medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem. *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176 (11th Cir. 1994). In contrast, delay or even denial of medical treatment for superficial, non-serious physical conditions does not constitute an Eighth Amendment violation. *Id.*

> The "seriousness" of an inmate's medical needs also may be decided by reference to the effect of delay in treatment.... Where the delay results in an inmate's suffering "a life-long handicap or permanent loss, the medical need is considered serious." ... An inmate who complains that delay in medical treatment rose

> to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Further, we have held that "the tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay." *Harris v. Coweta County*, 21 F.3d 388, 393-94 (11th Cir.1994) (emphasis added). Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.

*Id*. at 1188-89.

Plaintiff complains that Defendants denied him adequate medical treatment despite knowing he had a serious medical need. According to Anthony, Defendants "simply ignored [his] pain and suffering." He does not dispute, however, that his requests for medical care received a response and/or that he received examination on several occasions for his complaints of eye discomfort and pain and that he also received medication designed to alleviate his discomfort. (Doc. No. 19.)

Here, Plaintiff's medical records affirmatively reflect that he received responsive and appropriate health care during his incarceration at the Bullock County Jail. No evidence exists tending to show that Defendants demonstrated deliberate indifference towards Plaintiff's medical needs by intentionally or deliberately delaying or withholding necessary medical treatment, or by interfering with his ability to access such treatment. The court, therefore, concludes that Plaintiff fails to present evidence demonstrating that Defendants in any way disregarded a substantial risk to his health by purposely delaying or denying him

adequate medical treatment. While Anthony argues that more could have been done for his medical complaints, or alternatively, he disagrees with what was actually done, such assertions do not support a claim under § 1983. *Hamm*, 774 F.2d at 1575. The court, therefore, concludes that Defendants' motion for summary judgment is due to be granted.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The motion for summary judgment filed by Defendants (Doc. No. 15) be GRANTED;

2. This case be dismissed with prejudice; and

3. The costs of this proceeding be taxed against Plaintiff

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **July 11, 2005**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain

error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

    Done this 28th day of June, 2005.

                                     /s/ Delores R. Boyd
                                     DELORES R. BOYD
                                     UNITED STATES MAGISTRATE JUDGE